# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **SHILOH LOCKARD** | : | |
| **3520 Kenyon Drive** | : | |
| **College Station, TX 77845** | : | |
| | : | |
| **Plaintiffs** | : | CIVIL CASE NO: _____ |
| **v.** | : | |
| | : | |
| **STEPHEN BURLEY** | : | **JURY TRIAL DEMANDED** |
| **12505 Beach View Drive** | : | |
| **Corriganville, MD 21524** | : | |
| | : | |
| **and** | : | |
| | : | |
| **ERIC HOLLIDAY** | : | |
| **95 Miner Road** | : | |
| **Grantsville, MD 21536** | : | |
| | : | |
| **Defendants.** | : | |

\*          \*          \*          \*          \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Shiloh Lockard, by and through Anton L. Iamele and IAMELE & IAMELE, L.L.P. who hereby sues Defendants Stephen Burley and Eric Holliday and in support thereof state as follows:

## PARTIES TO THE ACTION

1.    Plaintiff, Shiloh Lockard (hereinafter "Plaintiff" or "Plaintiff Lockard") is a citizen of the State of Texas residing at 3520 Kenyon Drive, College Station, Texas 77845.

2.      Defendant Stephen Burley (hereinafter "Defendant Burley") is a citizen of the State of Maryland with a primary residence at 1205 Beach View Drive, Corriganville, MD 21524.

3.      Defendant Eric Holliday (hereinafter "Defendant Holiday") is a citizen of the State of Maryland residing at 95 Miner Road, Grantsville, Maryland 21536.

## JURISDICTION & VENUE

4.      Pursuant to 28 U.S.C. §1332, this Honorable Court has original jurisdiction in this case as the amount in controversy exceeds the sum of $75,000.0 and parties are citizens of different states.

5.      Venue is proper in this Court, under 28 U.S.C. § 1391, as the subject occurrence took place at Nature's Granite, LLC, 326 Zion School Road, Grantsville, MD 21536 which is in Garrett County, Maryland.

6.      At all times relevant to this Complaint, Plaintiff Lockard was employed by Nature's Granite, LLC. The causes of action set forth in this Complaint are nevertheless permissible under MARYLAND ANNOTATED CODE, *Labor & Employment Article* §9-901 which provides in pertinent part: "When a person other than an employer is liable for the injury…of a covered employee for which compensation is payable under this title, the covered employee…may…bring an action for damages against the person liable for the injury…" Md. Code Ann., Lab. & Empl. § 9-901. A co-employee is regarded as a "person other than the employer" and accordingly an employee who seeks to obtain relief over and above worker's compensation may do so by filing suit against the liable third party, even one who is a co-employee of the injured party." *See Powell v. Erb*, 349 Md 791, 709 A.2d 1294 (1998); *see also Hastings, et ux. v. Mechalske,* 336 Md. 663, 673, 650 A.2d 274, 279 (1994)(the Maryland

Workers' Compensation Act permits an employee who suffers a compensable injury because of the negligence of a co-employee to sue that co-employee in respect of that injury),

*Hauch v. Connor*, 295 Md. 120; *Hutzell v. Boyer*, 252 Md. 227, 249 A.2d 449 (1969)( In the State of Maryland the Workmen's Compensation Act, "excludes an action in tort by an employee against his employer, but does not exclude tort actions between co-employees." ); and *Connor v. Hauch*, 50 Md. App. 217, 437 A.2d 661 (1981) (internal citation omitted) (Maryland is "one of some dozen States which permit employees to pursue their common-law remedies against co-employees…. The rationale here is that 'in the exchange for sure and swift compensation the worker has given up the right to sue his employer but not his fellow employee, because the fellow employee is not a party to such an agreement and has given up nothing in return for such an immunity.'")

## STATEMENT OF THE FACTS

7.      At all times relevant to this Complaint, Plaintiff Lockard was lawfully present on the premises known as 326 Zion School Road, Grantsville, MD 21536.

8.      On May 5, 2020, Plaintiff Lockard was working with Defendants Burley and Holliday, both of whom were co-employees at Nature's Granite, LLC.

9.      The three men were working collectively to move 10.5' x 5' quartz slabs from an A-frame rack, where they had been stacked on an outside storage lot, into Nature Granite's shop facility. Each of the quartz slabs weighed approximately 800 to 1000 pounds.

10.     Because the quartz slabs were unwieldy, the moving process required the concerted efforts of Plaintiff Lockard, Defendant Burley and Defendant Holliday.

11.     The slabs, which were stored leaning against one another, first had to be separated.

12.    Plaintiff Lockard and Defendant Burley would gain separation by standing on either side of the slab and inserting a slab wedge that would push the slab to be moved away from the adjacent slab against which it was resting on the rack. Once the slab wedge was in place, the separated quartz slab would be resting on its bottom edge and the surface of the face of the wedge.

13.    After the wedge had been placed, Plaintiff Lockard and Defendant Burley would position themselves on opposite sides of the slab to hold it in place.

14.    Defendant Holliday would  then engage the quartz slab with an ABACO "Little Giant Lifter" clamp attached to the bucket of a CAT 303 5E2 mini excavator.

15.    Although Defendant Holliday had not received specialized training regarding the operation of the Little Giant Lifter and he did not have heavy equipment certification for operation of the CAT 303 5E2 mini excavator, he had previously operated the configured equipment while working at Nature Granite.

16.    Defendant Holiday was situated within and operating the mini excavator at all times relevant to this Complaint.

17.    The ABACO "Little Giant Lifter" clamp, which gripped by applied pressure and friction, required physical positioning and engagement over the top edge of a quartz slab.

18.    Plaintiff Lockard was responsible for placing the clamp. The process required him to leave the edge of the quartz slab after the wedge had been installed, and then walk within its fall shadow wherein he would position and engage the clamp on the center portion of the top edge of the slab.

19.    Once the clamp was engaged, Defendant Holliday would raise the quartz slab vertically with the mini excavator, move the slab away from the rack, and position the slab onto a cart so that it could be wheeled into the shop.

20.    Plaintiff Lockard and Defendant Burley would then maneuver the loaded slab into the shop.

21.    Thereafter, Plaintiff Lockard and Defendant Burley would return to the A-frame rack to address the next quartz slab to be moved in the above described fashion.

22.    On the day of the incident at issue, Plaintiff Lockard, Defendant Burley and Defendant Holliday had successfully moved two quartz slabs in the manner described above. The happenings giving rise to this complaint occurred when they were addressing a third slab to be moved from the A-frame rack.

23.    Defendant Holliday maneuvered the mini excavator into position so that the lifter clamp was in place to be placed on the third quartz slab.

24.    After Defendant Holliday had positioned the mini-excavator, Plaintiff Lockard placed the slab wedge and gained the space necessary to engage the lifter clamp.

25.    Plaintiff Lockard then began adjusting the clamp latch onto the top edge of the quartz slab.

26.    As Plaintiff Lockard was undertaking these clamping efforts, Defendant Burley failed to take his position on the opposite side of the A-frame rack and/or engage the quartz slab.

27.    Plaintiff Lockard did not observe or otherwise know that Defendant Burley had not taken up his position and/or that Defendant Burley was not acting to stabilize the quartz slab.

28.     Defendant Holliday, who was seated within the mini-excavator and oriented facing the quartz slab, did not warn Plaintiff Lockard that Defendant Burley had not taken up his position on the opposite edge of the slab.

29.     Because Defendant Burley was not in position at the A-frame rack, no one was in place to physically address the quartz slab, gain control of the quartz slab and/or warn Plaintiff Lockard about the movement of the quartz slab.

30.     The quartz slab began to fall away from the A-frame rack toward Plaintiff Lockard.

31.     Defendant Holliday had the ability to drop the bucket of the mini excavator as the quartz slab started to lean over and prevent it from falling. He did not act, however, to prevent the happening.

32.     Plaintiff Lockard, who was positioned toward the middle of the quartz slab so that he could place the clamp, did not have the ability to maneuver completely out of the fall shadow of the quartz slab or otherwise avoid quartz slab as it fell over.

33.     The quartz falling slab struck and crushed Plaintiff Lockard's left leg. It also caused additional slabs to become loose from the A-frame rack.

34.     Plaintiff Lockard became pinned under one or more of the quartz slabs that had fallen away from the A-frame storage rack.

35.     Plaintiff Lockard remained trapped under the quartz slabs while his co-employees worked to remove the material.

36.     Plaintiff Lockard was unable to stand when he was extricated from the fallen slabs. He remained on the ground until emergency responders arrived on the scene.

37.     Plaintiff Lockard was transported from the scene to the University of Pittsburgh Medical Center Presbyterian Hospital where he underwent a series of surgeries to address the muscle, blood vessels, nerves, and bones that were broken, ripped and severed during the incident.

38.     Plaintiff Lockard was diagnosed as suffering, among other injuries, a comminuted and displaced bicondylar tibial plateau fracture with 1.4-cm depression of the lateral displaced main fragment and an comminuted fracture of the fibular head and proximal meta diaphyseal segment of the fibula with lipohemarthrosis.

39.     Plaintiff Lockard came under the care of an Orthopedic Traumatologist. Multiple staged procedures were performed during an inpatient hospitalization that continued through May 25, 2020 including, but not limited to:

   a.  A primary surgery the involved knee spanning, closed reduction of the fracture and the placement of external fixation devices, four compartmental fasciotomies, and the application of wound VAC for left leg compartment syndrome on May 6, 2020;

   b.  Irrigation and debridement and application of the wound VAC on May 8, 2020

   c.  Irrigation and debridement of the incisions on May 11, 2020;

   d.  Fracture reduction and reconstitution using a medial locking plate, lateral periarticular looking plate with repair of the lateral meniscus and removal of the external fixation and application of a wound VAC to the fasciotomy sites on May 11, 2020;

   e.  Irrigation and debridement with exchange of the wound VAC on May 15, 2020; and

f.  Delayed primary closure of the medial fasciotomy incision and split-thickness skin graft harvested from his left anterior thigh was applied to the left lateral lower leg fasciotomy site on May 19, 2020.

40.  As a direct result of this subject happening, Plaintiff Lockard suffered serious and permanent injuries, as well as severe mental anguish.

41.  Plaintiff Shiloh Lockard endured, and will in the future continue to suffer, proximately related physical pain and suffering, mental anguish, emotional pain and suffering.

42.  Plaintiff Lockard's injuries are permanent and debilitating, have altered his ability to function, and will affect him for the remainder of his life. He has in the past and will for an indefinite time in the future be deprived of ordinary pleasures of life, loss of well-being, and equanimity. His overall health, strength, and vitality have been greatly impaired.

43.  Additionally, Plaintiff Lockard has suffered and will continue to suffer damages including, but not limited to, expenses for medical treatment and healthcare necessitated by the subject happening; Lost wages and diminishment of future earning capacity.

**COUNT ONE – NEGLIGENCE**
**(Shiloh Lockard v. Stephen Burley and Eric Holliday)**

44.  Plaintiff Shiloh Lockard re-alleges and incorporates paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.  Defendant Stephen Burley conducted himself in a negligent and careless manner by, among other things, knowingly leaving Plaintiff Lockard in an exposed and vulnerable position without necessary assistance while handling the quartz slab.

46.  Defendant Eric Holliday conducted himself in a negligent and careless manner by failing to warn Plaintiff Lockard of the falling quartz slab and/or failing to take reasonable and appropriate efforts to adequately control the quartz slab that fell upon him.

47.     At all times relevant to this Complaint, Defendant Burley had actual and/or constructive knowledge that, among other things, that Plaintiff Lockard did not have an ability to physically control the quartz slab without assistance; that his presence was necessary at the A-frame rack for purposes of moving the third quartz slab; that it was necessary for him to maintain his presence in the location where the quartz slab was being moved. Defendant Burley separately owed continuing duties to, among other things, conduct himself in a reasonable and prudent manner, with due regard to other persons in and near the area, so as to prevent injury, such as Plaintiff Shiloh Lockard.

48.     At all times relevant to this Complaint, Defendant Eric Holliday had actual and/or constructive knowledge that Plaintiff Lockard would necessarily walk in to the fall shadow of the quartz slab in order to engage the clamp; that Plaintiff Lockard would not have the physical ability to control the quartz slab without assistance; and that Plaintiff Lockard should have been immediately notified to discontinue work efforts when Defendant Burley removed himself from the location of the A-frame rack.  Defendant Holliday separately owed continuing duties to, among other things, conduct himself in a reasonable and prudent manner, with due regard to other persons in and near the area, so as to prevent injury, such as Plaintiff Shiloh Lockard.

49.     Defendants Stephen Burley and Eric Holliday owed additional duties of care people in around the scene, including Plaintiff Shiloh Lockard, which are not expressly enumerated herein.

50.     Defendants Stephen Burley and Eric Holliday breached the duties of care that were owed to Plaintiff Shiloh Lockard by, among other things, failing to return to the location of the A-frame rack; failing to warm Plaintiff Lockard that the quartz slab was unattended after he had placed the slab wedge; failing to maneuver the mini excavator into place to abate, slow

and/or prevent that quartz slab from falling; leaving Plaintiff Lockard to address the third quartz slab without critical and necessary assistance; allowing Plaintiff Lockard to be within the fall shadow of the quartz slab when it was unsupported by the clamp and/or any other person on the scene; failing to undertake the minimal reasonable efforts secure the quartz slab while Plaintiff Lockard was preparing to engage the clamp; failing to warn Plaintiff Lockard that the slab was moving and/or that he was visibly in peril; operating heavy equipment without proper training; failing to abide by Nature Granite, LLC's policies, procedures and/or protocols concerning the movement of slabs in and around the shop property; and failing to comply with applicable laws and regulations of the State of Maryland and/or the applicable Federal law and regulations.

51.    Defendants Stephen Burley and Eric Holliday were negligent and careless under the circumstances in other respects not known to Plaintiff Shiloh Lockard, but which may become known prior to or at the time of trial.

52.    Defendants Stephen Burley and Eric Holliday breached the applicable standard of care in other ways that are not expressly enumerated herein.

53.    Defendants Stephen Burley's negligence proximately caused Plaintiff Shiloh Lockard to suffer the injuries and damages described herein.

54.    Defendants Eric Holliday's negligence proximately caused Plaintiff Shiloh Lockard to suffer the injuries and damages described herein.

55.    At all times relevant to this Complaint, Plaintiff Shiloh Lockard was free of any negligence and/or contributory negligence.

WHEREFORE, Plaintiff Shiloh Lockard demands judgment against Defendants Stephen Burley and Eric Holliday, jointly and severally, to include: (A) awards to the Plaintiff for actual, compensatory, special and consequential damages (past, present and future) in amounts to be

determined at trial; (B) an award to the Plaintiff for reasonable attorneys' fees and costs incurred in pursuing this action; and (C) any additional relief as this Court may deem appropriate.

Respectfully submitted,

IAMELE & IAMELE, LLP

_____ - s- _____
Anton L. Iamele, Federal Bar No. 14845
201 North Charles Street, Suite 400
Baltimore, Maryland 21201
410-779-6160 (Telephone)
410-779-6161 (Facsimile)
aiamele@iamelelaw.com
*Counsel for Plaintiff, Shiloh Lockard*

## PRAYER FOR JURY TRIAL

Plaintiff hereby requests that all issues raised in this Complaint be decided by way of a jury trial.

_____ - s- _____
Anton L. Iamele